IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILDRED MILLAR,** | : | CIVIL ACTION NO. 1:04-CV-2529 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **WINDSOR TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the court is a motion (Doc. 34), filed by defendant Officer Tobin L. Zech ("Officer Zech"), for summary judgement on the claim of plaintiff Mildred Millar ("Millar"), brought pursuant to 42 U.S.C. § 1983 for alleged Fourth Amendment violations. For the reasons that follow, the motion will be denied.

**I.      Statement of Facts**[1]

On November 22, 2004, Millar was one of several passengers riding in a vehicle being driven in York County, Pennsylvania. (Doc. 39 ¶ 1; Doc. 40 ¶ 1; Doc. 42, Ex. C at 7-8.) While stopped at a traffic signal, an off-duty police officer knocked on the driver's window and, displaying a badge, stated that he had observed the vehicle swerving and instructed her to pull into a nearby parking lot. (Doc. 42, Ex. B at 6-7; Doc. 42, Ex. C at 6; Doc. 42, Ex. F at 5.) The driver complied. (Doc. 42, Ex. C at 8.)

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, as the non-moving party. See infra Part II.

Within a few minutes Officer Zech and another York Area Regional Police officer arrived at the scene. (Doc. 42, Ex. C at 8; Doc. 42, Ex. D at 4.) The officers parked their police cars behind and adjacent to the vehicle in which Millar was sitting. (Doc. 42, Ex. C at 12.) While the other officer questioned the driver, Officer Zech asked a passenger sitting in the front of the vehicle for her name and identification. (Doc. 35, Ex. B at 3; Doc. 42, Ex. E at 6.) Zech went to his patrol car and, upon returning, informed the passenger that she had provided false identification. Officer Zech pulled the passenger from the vehicle and placed her against one of the police cars. (Doc. 35, Ex. B at 3; Doc. 42, Ex. C at 15-16, 19; Doc. 42, Ex. E at 12; Doc. 42, Ex. F at 6.)

Millar exited the back of the vehicle in which she was riding and approached Officer Zech, whose back was to her, and asked "what seems to be the problem?" (Doc. 35, Ex. B at 3, 7; Doc. 42, Ex. C at 21, 23.) Officer Zech purportedly turned around and, without saying anything, extended his arm, striking Millar in the chest.[2] (Doc. 35, Ex. B at 3-4; Doc. 42, Ex. C at 23-24; Doc. 42, Ex. B at 22.) Millar fell backwards from the blow, striking her head and lower back on the macadam parking lot, and suffered injuries to her chest, knees, legs, and back. (Doc. 42, Ex. C at 24-25, 27-28, 38-39.) An ambulance was summoned, and Millar was evaluated by

---

[2] According to Officer Zech, he noticed Millar approaching him and ordered her to stop. (Doc. 42, Ex. G at 6-7.) When she continued toward him he raised his right hand to stop her from getting any closer to him. (Doc. 42, Ex. G at 5, 6.) Zech testified that Millar ran into his extended hand, took two steps backwards, fell onto her backside, rolled onto her back and bumped her head on the ground. (Doc. 42, Ex. G at 5, 6.) This is largely consistent with the testimony of the other officer on the scene. (See Doc. 42, Ex. D at 7-9.)

paramedics and released from the scene. (Doc. 35, Ex. B at 3.) Thereafter, Millar developed pain and discomfort in her lower back, legs, and hip, and underwent surgery and physical therapy. (Doc. 42, Ex. C at 35, 36, 38.)

The instant action was commenced in November 2004. The complaint sets forth claims pursuant to 42 U.S.C. § 1983 against Officer Zech for excessive use of force in violation of the Fourth Amendment, and for the torts of assault and battery and intentional infliction of emotional distress. The complaint also alleges that the York Area Regional Police Commission ("Police Commission") and Police Chief Thomas C. Gross ("Gross") failed to train Officer Zech on the appropriate use of force, that they "tolerated and ratified" officers' excessive use of force, and that Officer Zech, Gross, and the Police Commission's conduct violated various provisions of the Pennsylvania Constitution. (Doc. 1 ¶ 26, 34, 47, 48).

On January 31, 2005, defendants filed a motion to dismiss, arguing that Gross and Officer Zech are entitled to qualified immunity, that the Police Commission is not an entity subject to suit, that relief cannot be granted on the state constitutional and tort claims, and that punitive damages are unwarranted. (See Docs. 7, 8.) The court subsequently granted the motion in part, dismissing all state constitutional claims, the claims against the Police Commission, and the intentional infliction of emotional distress claim against Gross. (See Doc. 21.) Plaintiff subsequently filed a stipulation dismissing all claims except those against Officer Zech.[3] (See Doc. 31.)

---

[3] Accordingly, the remaining claims in this case are Fourth Amendment excessive force, assault and battery, and intentional infliction of emotional distress. (See Doc. 1 ¶¶ 26, 47)

Officer Zech filed the instant motion for summary judgment on May 15, 2006. Zech contends that there is insufficient evidence of a Fourth Amendment violation, and that he is entitled to qualified immunity. (See Doc. 34.) The motion has been fully briefed and is now ripe for disposition.

## II. Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

## III. Discussion

Section 1983 of Title 42 of the United States Code, and other Reconstruction-era provisions of the Civil Rights Act, 42 U.S.C. §§ 1981-1986, offers private citizens

4

a means to redress violations of federal law by state officials.  See id.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. § 1983.  Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."[4]  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery. Certain officials, including police officers and other state actors who perform "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999).  This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S. 224, 227 (1991).  Application of this legal doctrine hinges on (1) whether the allegations of the complaint demonstrate "a deprivation of an actual constitutional right" and (2) whether "that

---

[4] Defendant apparently does not dispute that, during the alleged incidents, he was "acting under color of state law."

5

right was so clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999); Bartholomew v. Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000).

Although entitlement to immunity may be resolved on the allegations of the complaint, factual issues often compel an examination of the evidentiary record, particularly when immunity is raised for the first time at the summary judgment stage. See Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996). "[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)." Id. In these cases, the court's analysis of the merits of a plaintiff's claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity. See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Wright v. City of Philadelphia, 409 F.3d 595, 599-601 (3d Cir. 2005); Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000).

If it is determined that a deprivation of rights may have occurred, the "question [becomes] whether a reasonable public official would know that his or her specific conduct violated clearly established rights." Grant v. City of Pittsburgh, 98 F.3d 116, 121(3d Cir. 1996) (citing Anderson v. Creighton, 483 U.S. 635, 636-37 (1987)). This requires a determination of whether, taking the evidence in the light most favorable to the plaintiff, the defendant should have known that

his or her actions contravened statutory or constitutional guarantees.  Gruenke, 225 F.3d at 299-300.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Anderson, 483 U.S. at 640 (citation omitted), quoted in Hope v. Pelzer, 536 U.S. 730, 739 (2002).

In the matter *sub judice*, Millar contends that Officer Zech used excessive force in violation of the Fourth Amendment's protection against unreasonable seizures.  Claims of excessive force require a plaintiff to prove that officers used force, and that such force was "unreasonable."  Graham v. Connor, 490 U.S. 386, 395 (1989); Russoli, 126 F. Supp. 2d at 858; see also Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) ("[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.").  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Graham, 490 U.S. at 395 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).  "[N]ot every push or shove, even if it may later seem unnecessary," is a violation of the Constitution.  Id. at 396.  Indeed, officers are permitted to use force in measured response against those that would interfere in their duties.  See, e.g., Grayer v. Township of Edison, Nos. 05-1623, 05-1624, 05-1994, 2006 WL 2241238, at *4 (3d Cir. 2006).  However, when the force used

is not proportional to a perceived threat the action may be violative of constitutional norms. See id. The test for a constitutional violation is whether the officer's actions, under a totality of the circumstances, are "objectively reasonable," without regard to the officer's underlying motivations or intent. Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003). The trier of fact must review the circumstances surrounding the alleged violation, including whether the force applied was of such an extent as to lead to the citizen's physical injury, whether the citizen was violent or dangerous, whether the incident occurred in the context of effecting an arrest, the duration of the conduct, the possibility that the citizen may be armed, and the number of individuals with whom the police officers were contending at the time. See Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997); see also Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006).

In the case *sub judice*, Millar allegedly approached Officer Zech and merely inquired "what is the problem." In response, Officer Zech purportedly turned and, unprovoked and without warning, struck Millar in the chest. The force of the blow sent Millar to the ground, and allegedly resulted in injuries serious enough to require surgery. There are no allegations that Millar was violent or dangerous, and she was not placed under arrest or charged with violating any law. There is no testimony before the court that would suggest that Millar was interfering with the passenger's arrest, or that there was concern that Millar may have been armed. Finally, the record is not clear with respect to the other passengers in the vehicle, and whether Officer Zech and the other officer were forced to contend with them

during this time.  As construed in the best light to Millar, these facts are sufficient for a reasonable juror to infer that Officer Zech used excessive force and violated her Fourth Amendment rights.  As the right to be free from excessive force was clearly established at the time of the alleged violation, qualified immunity will not shield Officer Zech from suit.  Accordingly, his motion for summary judgment will be denied.[5]

    An appropriate order will issue.

                                    S/ Christopher C. Conner
                                  CHRISTOPHER C. CONNER
                                  United States District Judge

Date:  August 23, 2006

---

[5] Given this result, defendant's motion (Doc. 44) for relief from mediation pending disposition of the instant motion will also be denied.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILDRED MILLAR,** | : | **CIVIL ACTION NO. 1:04-CV-2529** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **WINDSOR TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 23rd day of August, 2006, upon consideration of defendant's motions (Docs. 34, 44) for summary judgment and for relief from mediation, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 34) is DENIED.

2. The motion for relief from mediation (Doc. 44) is DENIED as moot.

       S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge